Your Honor, this is a case where the defendant was precluded from presenting a defense at trial. Mr. Santana was accused of violating 8 U.S.C. section 1326, which is attempted or, in this case, attempted reentry into the United States. In that kind of a case, the government must prove beyond reasonable doubt that Mr. Santana intended to come into the United States or had a conscious desire to enter the United States. Mr. Santana's only defense in this case was that he did not intend to enter the United States. The trial court here precluded the defendant from introducing physical evidence and testimony of live witnesses, basically based on relevance. And the witnesses and the evidence were offered to show that Mr. Santana did not have any intent to enter the United States. The failure of the trial court in this case to allow the evidence or to allow the defendant to present his only defense deprived Mr. Santana of his right to due process, a fair trial, fundamental fairness. The only question you're talking about – The only question – Sir, go ahead. I'm sorry. The – you know, I – just to let you know where I'm coming from, I think that Judge Rehl did exclude all evidence related to the principle of defense in this case. But I do find one part of the defense somewhat implausible, which is how could they be in the wrong line for seven miles, headed the wrong direction, heading toward the border instead of away from the border? It seems like if you're going to be lost, you would – I mean, I can't even envision – I can't envision the factual circumstance here, that they couldn't turn around and get out of the line. Now, maybe that's another question for the jury. Maybe all of this should have just I'm just wondering about that. I understand that, Your Honor. And I don't know if Your Honor has ever been down to Tijuana before, but on a Memorial Day weekend, with all the people coming back on Monday night, there are lines seven miles from the border. There are also police units on that side, on the Mexican side of the border, which is directing all traffic, especially those with California license plates or American license plates, toward the border. Now, there was testimony that they had stopped and asked some Mexican police, or they had gone by some Mexican police and said, can we turn around? We're not going toward the border. Can we turn around? And the Mexican police said, yes, you can turn around down there, or you can turn around here, or you can turn around there. But they found themselves in this big, long line. And every time they tried to get out of the line, I think the testimony is, they were directed back in at either by Mexican police or by roadblocks, cones. So, and I do agree with Your Honor that it does sound, if you're not from San Diego or haven't been to Tijuana on a Memorial Day weekend, it does sound implausible. Well, I have to say I have not. Counsel, I had a different question. I don't understand why we should focus on due process. It seems like a much simpler case to handle in terms of whether it's an abuse of discretion. And also, if there's a due process violation, a fortiori, there's an abuse of discretion. But you can establish an abuse of discretion without it rising to the level of a violation of due process. So I don't actually understand why we should or could reach due process. Your Honor, the reason why the defense is arguing the due process violation in this case is because of the magnitude of the defendant not being able to receive a fair trial and not being able to present a defense. It's not a matter of keeping out some testimony or keeping out some document. In this case, it's a matter of, did you have a fair trial? No. Were you given a chance to present witnesses? No. And I think what Judge Kleinfeld is suggesting is that if there was an abuse of discretion, then we don't need to reach the constitutional question. Well, I understand that. I just wanted to point out to the Court that I think that this case does reach a fair of constitutional magnitude. But you wouldn't rest your sole ground on due process if you could win your case on abuse of discretion or an erroneous evidentiary ruling? Of course not. Is there any way you could manage to lose on abuse of discretion even theoretically but still win on the due process issue? Not that I can think of. I can't either. Basically, the judge's grounds for keeping the evidence out was relevant. Basically, he said in the record that the only evidence that could be presented of the defendant's state of mind was whatever happened at the border, whatever – basically whatever happened at the border. And we believe that this is also air. We believe Rule 401 is – basically says that – basically says that the only criteria for relevant evidence is that it has some tendency to prove or disprove or not even prove or disprove it. It's to make a fact of consequence either more probable or less probable. And again, Rule 402 says that if it is relevant, as it is in this case, then it is admissible unless there's some other rule that keeps it out or some other case law that keeps it out. In an attempted reentry case, we know that intent to enter the United States is a fact of consequence because it has to be proven beyond a reasonable doubt by the government. And most of my – most of the remainder of my arguments go to the constitutional nature of the error in this case. But I would also like to address the issue of whether the verdict would have been changed unless the Court has already some predisposition on that. The – basically, the evidence here, there was no – there was no chance for confusion. There was no Rule 403 problems, and the Court did not suggest that there were any Rule 403 problems. There wasn't any danger of prejudice to the government. The government had notice of everything that the witnesses would testify to. They had all the exhibits. They had – there was no surprise. They didn't object to it in their – in limiting motions. And in a normal case, the defendant's defense or evidence of the defendant's defense at trial, the Court should consider all or should balance the need for the circumstances, all the circumstances that are related to the defendant's evidence, whether or not it's probative, whether or not it's capable of evaluation by the finder of fact or the jury, whether it's the sole evidence on the issue, or whether it's merely cumulative, and whether the evidence constitutes a major part of the attempted defense. In this case, all of those factors would go toward admitting the evidence. Your Honor, as far as the change to the – whatever effect this evidence might have had to the jury, first, it would have buttressed the testimony of Mr. Shoshone. Mr. Shoshone would have testified to additional items that he was going to – that he was bringing. It would have – he had this implausible story from the border, and it would have shown that he was a credible witness. Basically, the jury verdict turned on the choice between two factual considerations, whether or not Mr. – whether or not these things were true, that Mr. Santana did not intend to come to the United States, or that he was just sneaking into the country. Admitting the evidence would have given the jury ample evidence to consider, and they could have very easily come to the conclusion that Mr. Santana did not intend to enter the United States and, therefore, wasn't guilty of the crimes he was convicted of. Thank you. Thank you, counsel. Morning, Your Honor. James Spazio of the United States in this matter. This appeal is from a conviction in which the jury found the defendant guilty of two counts. Counsel, did the government object to the evidence that the judge kept out? At trial, Your Honor, it did, on relevance grounds. Correct. I'm trying to find out whether the judge kept it out sua sponte or on the – or whether it did or not. No, it was objected at every turn on relevance grounds. I'm sort of amazed. I would think that the AUSA would be interested in protecting the judge from error by assuring that evidence that it would be reversible error to keep out got in. Your Honor, I would respond that, well, he did – the evidence was deemed irrelevant. He did not explain why he felt that. It's irrelevant. The whole case is about whether the guy really intended to enter the United States, whether it was his desire to enter the United States. I think it's the way one of our cases puts it. And the evidence of his mother and his – I think it was his brothers or brother and sister all had a tendency to support the inference that he did not intend or desire to enter the United States. That's the test of relevance. I don't get it. I would respond two ways to your first point about the transportation, the shipping arrangements made by the family members. I would respond by arrangements made several months before the border crossing in Bishop, California, hundreds of miles away is irrelevant to whatever the defendant's claim to mind was at the border. That's not relevant. All that you're talking about there is a weaker or stronger tendency to prove the proposition at issue. You know, why didn't – I would think it would be in the government's interest to let the jury weigh this. In your brief, you argue several ways in which this evidence could have been rejected by the jury because they could have thought of alternative considerations. You could have argued alternative considerations. All your brief did to me was say this is something that should have been before the jury to figure out what was his true state of mind. And maybe all of this evidence, which, I mean, it's – most of it's physical evidence. It's not like we're concocting a lot of speculative stories here. Physical evidence that could have been admitted. You know, if the jury had had the opportunity to consider it and reject it, you'd have a sound conviction. Now you have one that looks like it's on the way back. Well, I would remind the Court of the standard review on such matters. Evidentiary rulings, as the Court is aware, are reviewed for abuse of discretion. That's right. That doesn't mean that they are impervious to review. And I must say also, when you've got a judge who looks like they're going your way and the review is abuse of discretion, I think it's unseemly for the government to push to get evidentiary rulings that seem on their face to be likely to be wrong, hoping that the standard review will correct an erroneous evidentiary ruling. It seems to me that the government simply pressed too hard in this case. I gather it was Ms. Flynn who tried most of it. Were you present there also in the courtroom? Your Honor, I was not, no. I see. And I would respond. Even if you were to believe that this – and it seems like you're leaning – you think this is a clear error in judgment, I would defer. There has been no showing of prejudice. It did not – I thought it was – let me tell you where I stand. I don't know about my colleagues because we don't confer before argument. I thought it was inexcusable. If I were a district judge, I'd never again trust a prosecutor who let me make errors of this sort. My thought was he tells a story. I didn't mean to go into the United States. We got stuck in this line and I just got dragged in there against my will basically. That's a perfectly good defense if it's believed. Juries tend not to believe a defendant's bare story. It has to be corroborated. It comes in with all this corroboration. The whole issue in the case is whether his story about his mental state is true or false. The corroboration is the whole case. Does the jury believe and is it persuaded by the corroboration? It doesn't come in. Inexcusable. Terrible prosecution. A wasted trial. I would love to have you talk me out of this because I hate this kind of waste. But so far you haven't given me any help. You tell me the standard of review. Well, I know what abuse of discretion means. It means that I can think I would have ruled differently, but I still have to affirm the ruling if it's within the range of discretion that a reasonable district judge would have. But if I think, just no way, it's not a fair trial if you do that, then we reverse. Well, if I may, Your Honor, respond. They did put on extensive testimony through Crescione. His testimony spans nearly 50 pages in the transcript. You know as well, I'm sure you have tried criminal trials. People don't believe the criminal defendant. He wasn't the defendant. That was his friend, the driver. Right, his passenger. He was the passenger of the driver. Well, of course, his friend. I mean, the physical evidence was the key. The tangible evidence was the key, not the statements. People think the friend, I guess he didn't testify, I don't know. But they're going to have a tendency to disbelieve this person for all the reasons that I'm sure the prosecutor raised. And so all this corroboration of that story, which is tangible, was the crux of the defense. Well, Your Honors, please bear in mind that there was overwhelming independent evidence of his conscious desire to enter. Upon reaching the border, the defendant made all the more reason to let the evidence in so you don't waste the trial. Well, not if it only has minimal probative value. Show me that it's not just an inexcusable error. Because however minimal probative value there would be to these photographs of these items that were allegedly shipped from Bishop to Mexico for the defendant to return with him, I mean, even if that had some minimal probative value, there is tons of evidence of his conscious desire. He made an oral false claim to U.S. citizenship. Well, no. Shoshone never said anything about lying. Excuse me. There was conflicting testimony on that very point. I'm sorry? There is conflicting testimony on that very point. Shoshone says he did not make such a statement. And the evidence was he was hard to understand. Well, not on that point, Your Honor. He did make the oral ‑‑ it was not conflicting as to whether or not he stated his citizenship. I believe it was conflicting as to whether he stated ‑‑ where he was born. And there his response was garbled and unintelligible. He asked him again in English and in Spanish, where were you born? Where were you born? He asked them in some ways and he couldn't understand him. That's the testimony from the Border Patrol. That's correct. What's the testimony from Mr. Shoshone on that point? He didn't recall whether he had actually affirmatively stated ‑‑ he doesn't recall him making an oral false claim to U.S. citizenship. He says, I didn't hear it. He was right there. And that's a credibility issue. Well, in other words, I'm back to where I was before. That's a disputed point. Correct. Okay. It's disputed. Correct. And that's not all. I mean, the border ‑‑ the government also put on ‑‑ the inspector testified he never made any statement about wanting to make a U-turn. And, again, you're right. It conflicts with the testimony from Mr. Shoshone. He said, that was my intent all along. However, the agent said, no, he never made any claim about wanting to turn around. He also testified, the government, that there was a 20- to 30-minute wait at the border that day. It was the end of a long weekend. Clearly, no one waits in line for that long a period and had ‑‑ wanting only to make a U-turn. Had ample time and distance to do so. Another point, there's seven miles, as Your Honor pointed out earlier. There's seven miles from this alleged fork in the road to the port of entry. Ample time and space within which to make a U-turn, if he had wanted to. This is the overwhelming evidence of his conscious desire to enter. So even if Your Honors believe that there is some probative value, I believe it's minimal, if at all. Well, you know, I'm not sure we need to say it again in a slightly different way. And I understand you're arguing here as an advocate. And what you say when you get back to the office may be different from what you're saying here in your appropriate role as an advocate. But if you have a case where your evidence is very strong, whether overwhelming or just very strong, and the defendant wants to put in some evidence that might help him, that seems relevant, and the jury may well disbelieve, let it in. Otherwise, you're going back, you're trying this case again. Don't push too hard. I understand Your Honor's point. My view is simply that it had at most only minimal relevance, and you had ample testimony from Ciccione to corroborate his defense. And the jury simply rejected it. They had two stories. They chose that. They didn't get the corroboration. They had one story and a half story. Nothing further, Your Honors. Thank you, counsel. United States v. Santana-Reyes is submitted.
judges: Kleinfeld, Wardlaw, W Fletcher